IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

───────────────────────────────────────────

TASSIE L. MCELRATH,            )
                               )
    Plaintiff,                 )
                               )
v.                             )         No. 22-CV-1214-TMP
                               )
KILOLO KIJAKAZI,               )
ACTING COMMISSIONER OF SOCIAL  )
SECURITY ADMINISTRATION,       )
                               )
    Defendant.                 )

───────────────────────────────────────────

**ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION**
───────────────────────────────────────────

On October 5, 2023, Tassie L. McElrath filed a Complaint seeking judicial review of a Social Security decision.[1] (ECF No. 1.) McElrath seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability benefits. (ECF No. 16 at 1.) For the following reasons, the decision of the Commissioner is REVERSED and REMANDED.

## I. BACKGROUND

On May 22, 2020, McElrath protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 404-434.

─────────────────

[1]After the parties consented to the jurisdiction of a United States magistrate judge on January 9, 2023, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 13.)

(R. at 151.) The application, which alleged an onset date of January 16, 2020, was denied initially and on reconsideration. (Id.) McElrath then requested a hearing, which was held before an Administrative Law Judge ("ALJ") over telephone on July 14, 2021. (Id.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that McElrath was not disabled. (R. at 158.) At the first step, the ALJ found that McElrath has not engaged in substantial gainful activity since the alleged onset date of January 16, 2020. (R. at 153.) At the second step, the ALJ concluded that McElrath had the following severe impairments: "post laminectomy syndrome; spondylosis without myelopathy or radiculopathy of the lumbar region; trochanteric bursitis of bilateral hips; and obesity." (R. at 154.) At the third step, the ALJ concluded that McElrath's impairments do not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) Accordingly, the ALJ had to next determine whether McElrath retained the residual functional capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that McElrath "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance or stoop;

occasionally kneel or crouch; never crawl; and no concentrated

exposure to hazards (machinery, heights, bodies of water)." (Id.)

Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting

no more than 20 pounds at a time with frequent lifting or carrying

of objects weighing up to 10 pounds." Additionally, light work

includes jobs "requir[ing] a good deal of walking or standing, or

[that] involve[] sitting most of the time with some pushing and

pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

In reaching the RFC determination, the ALJ discussed

McElrath's testimony and the medical evidence in the record. The

ALJ summarized McElrath's testimony as follows:

> The claimant testified that she has tried to work but
> that she can't stand long enough to do the work. She
> stated that her back and legs hurt, limiting her standing
> to no more than 10 to 15 minutes. She stated that she
> sleeps most of the time as a side effect from her
> medications. She stated that her medications help the
> pain in her back but that her leg still burns. The
> medical evidence of record, however, does not fully
> support the claimant's testimony. Specifically,
> objective examination findings note largely normal
> findings, with only some pain with range of motion
> testing and tenderness. The claimant has not complained
> of drowsiness as a side effect to her pain management
> physician and has in fact reported that her medications
> help her to work and to perform activities of daily
> living.

(R. at 157.) The ALJ concluded that "[McElrath's] medically

determinable impairments could reasonably be expected to cause the

alleged symptoms; however, the claimant's statements concerning

the intensity, persistence and limiting effects of these symptoms

- 3 -

are not entirely consistent with the medical evidence and other evidence in the record[.]" (Id.) The ALJ then considered McElrath's medical records and treatment history, concluding that "[McElrath] has the capacity for work activity consistent with the residual functional capacity outlined above." (R. at 158.)

The ALJ separately considered McElrath's body mass evaluation, stating:

> [T]he undersigned has specifically considered claimant's obesity in accordance with Social Security Ruling 02-1p. The claimant is 67inches tall and weighs approximately 252 pounds. Under the National Institutes of Health criteria, this translates to a body mass index of 39.5 which is considered obese. Social Security Ruling 02-1p provides guidance for evaluating claims where obesity is an impairment. The ruling clarifies that obesity can cause limitations of functions such as sitting, standing, walking, lifting, carrying, pushing and pulling. It can also affect postural functions such as climbing, balancing, stooping, and crouching. The claimant's ability to perform routine movement and necessary physical activity within the work environment has been impaired by her obesity. The combined effects of her obesity with her other impairments is greater than might be expected without the obesity. The functional effects of this impairment have been incorporated into the assessed residual functional capacity.

(R. at 156–57) (internal citations omitted).

The ALJ considered the findings of Dr. Donita Keown, a consultative examiner for the State agency for disability determination services ("DDS"). (Id.) Dr. Keown noted that McElrath could "move from seated to standing without assistance and used no assistive devices. She performed a slow but normal

- 4 -

straightaway walk and had normal strength. Straight leg raise

testing was negative." (R. at 156.)

The ALJ also considered the analyses performed by the Semmes-

Murphey Clinic following McElrath's discectomy. (R. at 155–56.)

The ALJ summarized the findings as follows:

> The claimant recovered well from that surgery. An April
> 2020 x-ray of the lumbar spine was normal. She returned
> to Semmes Murphy in May 2020 with complaints of low back
> and left lower extremity pain. The claimant reported
> that she returned to work, but reported difficulty with
> lifting. Upon examination, she had some reduced range of
> motion in the lumbar spine and tenderness in the left
> lumbar region, but no other abnormalities. A May 2020
> MRI of the lumbar spine revealed postoperative change at
> L5-S1 from the previous discectomy but no evidence of
> recurrent disc herniation. Some mild degenerative
> changes were noted as well as a mild disc bulge at L3-4
> and L4-5.
>
> At her next visit to Semmes Murphy in September 2020,
> her treating physician noted that he had wanted to try
> epidural injections but that the claimant had started
> treatment with a pain management clinic in Nashville.
> The claimant reported burning pain in both lower
> extremities and numbness in her feet. Upon examination,
> the claimant had pain with range of motion in the lumbar
> spine but displayed a normal gait. EMG testing was
> performed later in September 2020 which was normal for
> the bilateral extremities.

(Id.) (internal citations omitted).

The ALJ also considered the treatment notes from McElrath's

visit to West Tennessee Neuroscience, which explain that she

visited the office "in October 2020 with complaints of burning

pain and paresthesias in her legs. She was noted to be ambulatory

without assistance. Upon examination, she had full strength and an

antalgic gait. The treating neurologist had no further recommendations and encouraged the claimant to follow up with her pain specialist." (R. at 156.) Additionally, the ALJ considered the treatment notes from McElrath's numerous visits to the Pain Management Group. (Id.) The ALJ summarized the findings as follows:

> Treatment notes from the Pain Management Group from September 2020 note pain with range of motion and tenderness to palpation of the thoracolumbar spine, but no tenderness to palpation of the sacroiliac joint or in rotating the hips. Further, the claimant did not appear to be uncomfortable. In November 2020, the claimant reported that her medications were moderately effective in managing her pain and that her treatment plan helped her to be more functional, complete activities of daily living, and improve her quality of life. No significant changes were noted on examination or in her diagnoses. Similarly, in December 2020, the claimant reported that her pain was a 4/10 with medication and that her medications helped her to sleep, to be more active, to do home chores, to work part time, or to work full time.
>
> More recently, July 2021 treatment notes continue to document stability. The claimant's pain was noted to be a 5/10 with medication, and the claimant did not appear uncomfortable. She had some pain with range of motion testing but had normal strength and an antalgic gait. Diagnoses included lumbar post laminectomy syndrome; spondylosis without myelopathy or radiculopathy of the lumbar region; trochanteric bursitis of the bilateral hips; and long-term use of opiate analgesic. Her medications were continued.

(Id.) (internal citations omitted).

The ALJ describes considering the reports of two State agency medical consultants: Dr. Larry McNeil and Dr. Kanika Chaudhuri. (R. at 157.) "Their opinions are consistent with the medical evidence of record which documents largely unremarkable physical

examination findings and the claimant's own report that her
medications help her to work and perform activities of daily
living." (Id.) However, both doctors found increased limitations,
finding that McElrath's RFC is limited to sedentary activities.
(R. at 192, 209.) The ALJ explained that this finding was overly
restrictive in light of McElrath's "own reported activities."
(Id.)

The ALJ then looked at all of the medical evidence
holistically, without "any specific evidentiary weight, including
controlling weight, to any prior administrative medical finding(s)
or medical opinion(s), including those from medical sources." (R.
at 157.) The ALJ found that Dr. Keown's opinion was partially
persuasive, noting that "Dr. Keown's opinion is slightly overly
restrictive based on her own largely normal examination findings
as well as the largely unremarkable findings noted in the medical
evidence of record." (Id.) In reviewing the reports of the State
agency medical consultants, the ALJ found Dr. Larry McNeil's and
Dr. Kanika Chaudhuri's reports largely persuasive, explaining that

> [t]heir opinions are consistent with the medical
> evidence of record which documents largely unremarkable
> physical examination findings and the claimant's own
> report that her medications help her to work and perform
> activities of daily living. The undersigned finds that
> the limitation to occasionally lift 10 pounds is overly
> restrictive in light of the claimant's own reported
> activities.

(Id.) After considering all evidence, the ALJ concluded that McElrath "has the capacity for work activity consistent with the residual functional capacity outlined above." (R. at 158.)

At step four, the ALJ found that McElrath was able to perform past relevant work. (Id.) In making this finding, the ALJ relied on the testimony of a vocational expert who testified that McElrath's jobs as a supervisor housekeeper and as a manager of a housesitting service are "light skilled job[s]." (Id.) After considering this testimony and the RFC, the ALJ found that McElrath "is able to perform this work as generally performed." (Id.) As a result, the ALJ found that McElrath was "not disabled." (Id.)

On August 27, 2021, the ALJ issued a decision detailing the findings summarized above. The Appeals Council denied McElrath's request for review. (R. at 1.) McElrath now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner under § 1631(c)(3) of the Act. On appeal, McElrath argues that the ALJ incorrectly evaluated McElrath's RFC.[2]

---

[2]The government argues that McElrath's brief lacked sufficient specificity and thus she waived "any argument about the ALJ's RFC finding." (ECF No. 21 at PageID 1285-86.) Although McElrath's brief does not extensively discuss her objections to the ALJ's RFC finding, the undersigned finds that McElrath, by listing her symptoms, contesting the ALJ's decision as being against the weight of the evidence, and questioning the ALJ's assessment of the physical requirements of sedentary work, has not waived her challenge to the RFC.

## II. ANALYSIS

### A.    Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir.

1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.
1984)). If substantial evidence is found to support the
Commissioner's decision, however, the court must affirm that
decision and "may not even inquire whether the record could support
a decision the other way." Barker v. Shalala, 40 F.3d 789, 794
(6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs.,
893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not
try the case de novo, resolve conflicts in the evidence, or decide
questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d
709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506,
509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is
charged with the duty to weigh the evidence, to make credibility
determinations, and to resolve material conflicts in the
testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th
Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months." 42 U.S.C.
§ 423(d)(1). Additionally, section 423(d)(2) of the Act states
that:

- 10 -

>An individual shall be determined to be under a
>disability only if his physical or mental impairment or
>impairments are of such severity that he is not only
>unable to do his previous work but cannot, considering
>his age, education, and work experience, engage in any
>other kind of substantial gainful work which exists in
>the national economy, regardless of whether such work
>exists in the immediate area in which he lives, or
>whether a specific job vacancy exists for him, or whether
>he would be hired if he applied for work. For purposes
>of the preceding sentence (with respect to any
>individual), "work which exists in the national economy"
>means work which exists in significant numbers either in
>the region where such individual lives or in several
>regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate

burden of establishing an entitlement to benefits. Oliver v. Comm'r

of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial

burden is on the claimant to prove she has a disability as defined

by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746

(6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born

v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir.

1990). If the claimant is able to do so, the burden then shifts to

the Commissioner to demonstrate the existence of available

employment compatible with the claimant's disability and

background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of

Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a

five-step sequential analysis set forth in the Social Security

Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the

claimant must not be engaged in substantial gainful activity. See

20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

C.   **McElrath's RFC**

McElrath argues that the ALJ's RFC is not supported by substantial evidence. McElrath specifically contends that her

"severe disabling medical, exertional and non exertional factors exclude her from the occupational base," which the undersigned recognizes as a challenge to the ALJ's RFC determination that McElrath is capable of completing light work. (ECF No. 17 at PageID 1276.) To make an RFC determination, an ALJ considers factors including

> (i) . . . daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) Type, dosage, effectiveness, and side effects of any medication [the individual takes or has] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the individual is currently receiving or has] received for relief of pain or other symptoms;
>
> (vi) Any measures [the individual is using or has] used to relieve pain or other symptoms;
>
> (vii) Other factors concerning . . . functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). After reviewing the evidence presented, the ALJ here determined that McElrath's impairments permitted her to complete light work.

The government counters that multiple examinations found that McElrath had a normal gait, full strength in all extremities or no weakness, normal range of motion, and was ambulatory without assistance. (ECF No. at PageID 1287) (citing R. at 719, 724, 736,

808, 813, 823, 956, 960, 968, 978, 981, 1002, 1046, 1100, 1109, 1185.) Multiple clinic reports list McElrath as "negative" for back pain despite her allegation that the suffers from a disabling back impairment. (R. at 960, 972, 983.) The results of the September 2020 nerve conduction study, which was done following McElrath's complaint of a burning sensation in her lower extremities, were normal. (R. at 727.) Similarly, while diagnostic images of McElrath's lumbar spine revealed some issues post-surgery, there was no evidence of recurrent disc herniation and degenerative changes causing only mild foraminal narrowing at L4-5, and "slight" disc bulging at L3-4 and L4-5 (R. at 998.) X-rays in February 2021 of McElrath's hips were "normal." (R. at 1129.) McElrath herself reported that medications were "moderately effective in managing pain." (R. at 761.) She separately described treatment regimens helping her be more active and allowing her to work. (R. at 758, 765, 1009.) McElrath reported that she could perform more activities when her pain was managed, remarking that she felt she could work as well as do household chores. (R. at 156–57.)

However, both Dr. McNeil and Dr. Chaudhuri found that McElrath could only perform sedentary work. (R. at 192, 209.) Their reports are nearly identical and were generated only several months apart — Dr. McNeil's on September 2, 2020, and Dr. Chaudhuri's on February 17, 2021. (R. at 193, 211.)

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). The ALJ disagreed with the doctors' RFC on the basis that "the limitation to occasionally lift 10 pounds is overly restrictive in light of the claimant's own reported activities." (R. at 157.) However, the ALJ did not make clear in her opinion which reported activities she considered in making this determination. She previously noted that McElrath "has in fact reported that her medications help her to work and to perform activities of daily living." (Id.) But McElrath has not worked since March 2020. (R. at 303.) There is no indication from this statement that she is able to consistently lift ten pounds and lift as many as twenty pounds, as is expected for a light work job. The ALJ may also have been referring to McElrath reporting in December 2020 "that her pain was a 4/10 with medication and that her medications helped her to sleep, to be more active, to do home chores, to work part time, or to work full time." (R. at 157.) McElrath's self-reported ability to work full-time does not necessarily mean that she intended or expected to continue performing light work duties. The ALJ's findings are not well developed enough insofar as identifying with sufficient

- 15 -

specificity the grounds for her conclusion that the two state agency medical consultants' opinion that McElrath's RFC should be limited to sedentary work is contrary to "claimant's own reported activities."[3]

### III. CONCLUSION

For the reasons above, the decision of the Commissioner is REVERSED and REMANDED to the Commissioner for determination of McElrath's appropriate RFC in light of the record and completion of the next steps of the sequential evaluation process.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 7, 2023
Date

---

[3]Separately, McElrath appears to argue that the ALJ erred by failing to consider her asthma. (ECF No. 17 at PageID 1275-76.) In its response, the government correctly points out that (1) McElrath did not allege that she was disabled because of asthma, and (2) multiple medical reports found no limitations from asthma. (ECF No. 21 at PageID 1291) (citing R. at 724, 748, 749, 755, 808, 813, 956, 958, 960, 962, 965, 1018, 1033).